Van Winkle v. Williams.

MATTHEW A. VAN WINKLE, assignee,

*v.*

WASHINGTON B. WILLIAMS, assignee &c., et al.

One who advances money to another, to enable him, therewith, to make a loan to a third party on the security of an equitable mortgage, is not entitled to subrogation merely on the ground that he so advanced the money.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. C. L. Corbin*, for complainant.

*Mr. S. H. Little*, for C. H. Isham, trustee.

*Mr. W. B. Williams, in pro. pers.*

THE CHANCELLOR.

This suit is brought by Matthew A. Van Winkle, assignee, for the benefit of creditors under assignment made in New York, of the New York firm of M. Armstrong & Sons and of Matthew Armstrong and William Armstrong (members thereof), individually, against Washington B. Williams, assignee of Matthew Armstrong, under assignment made here for the benefit of

his creditors, and William Armstrong and Charles H. Isham, executors and trustees of and under the will of John Armstrong, deceased. The object is to compel the New Jersey assignee of Matthew Armstrong to pay to the complainant, assignee of M. Armstrong & Sons, $4,000, and interest thereon from September 4th, 1880, which sum, the complainant alleges, was then advanced by the firm for the estate of John Armstrong, under the following circumstances: On that day, Matthew Armstrong, being desirous of obtaining a loan of $4,000, applied for it to the confidential clerk (the complainant) of the firm, and referred him to William Armstrong for information and direction on the subject. The latter stated to the clerk that the firm was unwilling to lend the money to Matthew (who was, as before stated, a member of the firm, but had overdrawn his account of profits therein), but that Matthew was going to give a mortgage on property in Greenville, in Hudson county, in this state, to the estate of John Armstrong, and directed the clerk to give the firm's check for the money (which was, he said, to be refunded to it by the estate), and take the receipt, and carry the receipt as cash, in his (the clerk's) accounts, not making any charge of it in the books, inasmuch as it was to be so refunded. The clerk gave the check (on which Matthew Armstrong obtained the money) and took the receipt, which was as follows:

"NEW YORK, September 4th, 1880.

"Received from estate of John Armstrong, four thousand dollars, on account of bond and mortgage to be executed on school-house property on Danforth avenue, Greenville, New Jersey.

"$4,000. MATTHEW ARMSTRONG."

The complainant alleges that the money was never refunded to the firm, and he now claims that, as assignee of the firm, he is, in equity, entitled to the security of the equitable mortgage, of which the receipt is the evidence. There was, when the transaction took place, a large sum of money ($85,000) of the estate of John Armstrong in the hands of the firm. Mr. Isham, one of the trustees and executors of and under the will of John

Armstrong, insists that the estate is entitled to the benefit of the mortgage, and has filed his cross-bill for relief, accordingly.

William Armstrong, who, it will be remembered, was one of the executors of John Armstrong, as well as a member of the firm, was the person by whom the loan in question was made. It appears clearly, by his own testimony, as well as otherwise, that he was not willing to make the loan from the funds of the firm, and made it for and on account of the estate. The receipt itself might well be regarded as conclusive proof on this head. The reason why he did not, when the loan was made, permit his bookkeeper to charge the money, on the books of the firm, to the estate, was the fact that he did not then know, exactly, how the account with the estate stood. He seems to have acted on the idea that there was an agreement between the firm and John by which the estate of the latter was under obligation to keep $100,000 in the hands of the firm, at the risk of the business, and he says, in substance, that he intended that the estate should repay the $4,000 to the firm, if it should turn out that the credit of the former, on the books of the latter, did not exceed $100,-000, but if it should be found to exceed that sum to the amount of the $4,000, that the amount should be charged to the estate, on the books of the firm, and if it exceeded $100,000 by a less amount than $4,000, that then the estate should be charged with that excess, and pay the firm the balance of the $4,000. But he was in error as to the terms on which the $100,000 which John placed in the hands of the firm, were held by it. They were not held subject to the risks of the business, but, as appears by the written agreement, were left with the firm, subject to John's order. The agreement is in writing, and it is that that amount (it was the sum paid to him by Matthew and William, for his interest in the firm) should be placed to his credit on the books of the firm, subject to his order, and that, so long as the firm should have the use of it, it should pay interest thereon, at a specified rate. The $4,000 actually paid to Matthew were due to John's estate from the firm, and whether they be regarded as so much paid on account of the indebtedness of the firm to the estate, or (as William seems to have regarded the transaction) as

a temporary loan to the estate by the firm, the estate is, in either case, entitled to the security. In the latter aspect of the matter, the firm lent the estate $4,000, to lend to Matthew, on the account of the estate, and the estate is entitled to the mortgage, while the firm must look to the estate for repayment of the loan, and has no claim upon the mortgage. Had the executor been another person than William, and had the latter, acting for the firm, lent to the former $4,000, to lend to Matthew on mortgage security, it could not be doubted that the firm would have no right to the mortgage. The case is not changed by the fact that William was at once the acting executor, who invested the money, and the member of the firm who lent it, to enable the estate to make the investment, nor by the fact that the mortgage is a merely equitable one.

The written agreement to give a mortgage, the money having been advanced upon the faith of the security of it, is an equitable mortgage. There will be a decree that the New Jersey assignee of Matthew Armstrong pay to the executors of John Armstrong, out of the proceeds of the sale of the property mentioned in the receipt, and therein designated as the school-house property, on Danforth avenue, Greenville, New Jersey, which passed to that assignee under the assignment to him, $4,000, with lawful interest from the time of making the loan. The complainant has no claim against John Armstrong's estate, for or in respect of the $4,000, except as they are to be regarded as payment of that amount to John Armstrong's estate, on the day of the making of the loan. The complainant is to pay costs to the answering defendants.